UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUSTOPHARM, INC., a Texas Corporation,<br><br>Plaintiff,<br><br>v.<br><br>EXELA PHARMA SCIENCES, LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No.: 20-cv-01587-AJB-DEB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**(Doc. No. 17)** |

Pending before the Court is Exela Pharma Sciences, LLC's ("Defendant") Motion to Dismiss CustoPharm, Inc.'s ("Plaintiff") First Amended Complaint ("FAC"). (Doc. No. 17.) Plaintiff filed an opposition to the motion (Doc. No. 27), and Defendant filed a reply (Doc. No. 28). For the reasons set forth below, the Court **DENIES** Defendant's motion.

**I.   BACKGROUND**

This action stems from an alleged breach of contract. On or about May 19, 2009, Plaintiff entered into a written referral fee agreement ("Referral Agreement") with Defendant. (Doc. No. 24 ¶ 6.) Under the Referral Agreement, Plaintiff agreed to refer business to Defendant "for the production of pre-launch clinical trial materials and production of development and commercial drug products[.]" (*Id*.) In turn, Defendant

1

promised to (1) "keep any such information disclosed by [Plaintiff] confidential and not disclose such information to any third party, or use such information for their own benefit to start a new project" and (2) "pay [Plaintiff a] five percent (5%) commission on all payments received from any referral that resulted in a drug product being manufactured by [Defendant]." (*Id*. ¶ 8.) The commission included "any payments received from the referral, including payments received from R & D work, pre-launch development activities, commercial drug produce [sic] manufacturing and royalties from referred business." (*Id*. ¶ 9.) Commission payments were due within thirty days of Defendant receiving payments from the referred business, with a one and a half percent (1.5%) late fee. (*Id*.)

At the time of the Referral Agreement, "there were six (6) companies that [Plaintiff] identified and [Defendant] acknowledged had been referred pursuant to the terms of the Referral Agreement." (*Id*. ¶ 10.) Since the parties executed the Referral Agreement, the number of referred companies "grew to at least eleven (11) companies." (*Id*.)

"The Referral Agreement allowed either party to terminate the Referral Agreement 'with six months written notice with all existing business surviving termination[.]'" (*Id*. ¶ 11 (quoting the Referral Agreement).) On or about April 19, 2012, Defendant provided written notice to terminate the Referral Agreement and proposed new terms and obligations, including revising the survivability provision. (*Id*. ¶ 12.) Plaintiff accepted only the termination notice and never agreed to the proposed new terms. (*Id*. ¶ 13.) Defendant's termination notice became effective on October 19, 2012. (*Id*.)

After termination, Plaintiff claims Defendant made two referral payments under the Referral Agreement in 2013 and 2014. (*Id*. ¶ 15.) From 2015 to 2020, Plaintiff inquired with Defendant if Defendant "was conducting business with any of the eleven (11) companies listed in the Referral Agreement and whether any commissions were owed to [Plaintiff]." (*Id*.) Plaintiff claims Defendant "never identified any such business and never disclosed that, in fact, it had received revenues" from some of the eleven companies. (*Id*.) Plaintiff further alleges there was no way to verify Defendant's information and relied on Defendant to provide truthful and accurate information. (*Id*. ¶ 16.)

Plaintiff alleges that it first learned that Defendant was conducting business with the referred companies and owed commissions to Plaintiff in June 2020, through a third-party. (*Id*. ¶ 17.)[1] Plaintiff thereafter contacted Defendant, and Defendant allegedly provided Plaintiff a spreadsheet indicating "over $1.1 million was earned and owed in commissions under the Referral Agreement since 2015." (*Id*. ¶ 18.) Plaintiff demanded payment but Defendant allegedly "refused claiming some newly created offset as an excuse not to pay." (*Id*. ¶ 19.) The FAC asserts claims for (1) breach of contract, (2) accounting, and (3) declaratory relief. The instant motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) follows.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard is not a probability requirement but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

To determine the sufficiency of the complaint, the court must assume the truth of all factual allegations therein and construe them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). This tenet, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint is subject to dismissal. *Iqbal*, 556 U.S. at 679.

---

[1] Defendant filed a motion seal the information related to this discovery as confidential and sensitive to its business interest. (Doc. No. 18.) The Court accordingly granted the unopposed motion. (Doc. No. 22.)

## III. DISCUSSION

The Court previously granted Defendant's first motion to dismiss, finding that Plaintiff's original complaint did not plead enough facts to toll the application of the statute of limitations in this case. (Doc. No. 13.) With its second motion to dismiss, Defendant contends that Plaintiff's FAC still fails to show that the statute of limitations does not bar its breach of contract claim. (Doc. No. 17 at 5.)[2] Defendant further argues Plaintiff's accounting and declaratory relief claims fail because both are dependent on the breach of contract claim that is time-barred and inadequately pled. (*Id*. at 14.) Plaintiff maintains that its claims are timely, and that Defendant breached the Referral Agreement when it failed to pay the commissions it owed Plaintiff. (Doc. No. 27 at 9.) The Court discusses the viability of Plaintiff's claims in turn.

### A. Breach of Contract

Defendant asserts that the statute of limitations bars Plaintiff's breach of contract claim. Neither party disputes that California law applies in this case. (Doc. Nos. 17 at 9; 27 at 9.) "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). California's statute of limitations for a written contract is four years. Cal. Code Civ. Proc. § 337. Generally, a cause of action for breach of contract "accrues at the time of the breach," and the statute begins to run "regardless of whether any damage is apparent or whether the injured party is aware of their right to sue." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (citing *Niles v. Louis H. Rapoport & Sons*, 53 Cal. App. 2d 644, 651 (1942)). A court may dismiss a suit under Rule 12(b)(6) based on the statute of limitations "only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010) (citation omitted). Dismissal on this

---

[2] The pinpoint page citation refer to the ECF-generated page numbers at the top of each filing.

basis "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

Plaintiff's breach of contract claim rests on the allegation that Defendant failed to pay money owed to Plaintiff under their Referral Agreement. (Doc. No. 24 ¶ 15.) Specifically, Plaintiff alleges a breach first occurred in 2015 and continued each year through 2020 when Defendant did not pay commissions owed pursuant to the survivability provision of the Referral Agreement. (*Id.* ¶ 18.) Defendant disagrees and claims that any breach occurred, at the latest, on October 19, 2012, when Defendant's termination notice of the Referral Agreement took effect. (Doc. No. 17 at 11.) The Court disagrees.

In Defendant's view, a dispute arose at the time it sent Plaintiff the termination notice because Plaintiff did not accept Defendant's revisions to the Referral Agreement's survivability provision. (Doc. No. 17 at 9.) Plaintiff's FAC, however, does not allege a breach pertaining to Defendant's issuance of the termination notice. In fact, Plaintiff alleges that it "accepted the Termination Notice as [Defendant] invoking its right to terminate the Referral Agreement[.]" (Doc. No. 24 ¶ 13.) Although Plaintiff does allege that along with the termination notice, Defendant attempted to "enter into new terms revising the obligations of the parties, including the survivability provision of the Referral Agreement," (*id.* ¶ 12), there is no allegation that the proposal of new terms affected the validity of the termination notice. In any event, a disagreement about proposed new terms does not constitute a breach of the parties' then-existing Referral Agreement. Thus, accepting the allegations in the FAC as true, there is no allegation that Defendant breached the contract when submitting the termination notice.

Based on the facts alleged, Defendant unilaterally terminated the parties' Referral Agreement as was its right under the contract upon proper notice. Although the contract was terminated, the survivability provision in the Referral Agreement indicates that "all existing business surviv[e] termination." (Doc. No 24 ¶ 11.) Therefore, this survivability provision continues to apply, as originally agreed upon, regardless of Defendant's later

attempt to renegotiate. (*Id*. ¶ 13.) Indeed, the survivability provision's continuing applicability notwithstanding the termination in 2012 is further supported by Plaintiff's allegation that in 2013 and 2014, Defendant made two payments to Plaintiff and "represented that those payments were for referral under the Referral Agreement." (*Id.* ¶ 15.) Plaintiff alleges that beginning 2015, it made periodic inquiries of Defendant as to whether any commissions were owed, and Defendant never disclosed that it had received revenue from the companies listed in the Referral Agreement. (*Id*.)

Accordingly, accepting as true the factual allegations in the FAC and viewing them in the light most favorable to Plaintiff, the Court finds there is a plausible claim for a breach of the Referral Agreement around 2015. Plaintiff, however, did not file a complaint until August 17, 2020, which is past the four-year statute of limitations period. *See* Cal. Code Civ. Proc. § 337. As such, the Court next considers whether the assertions in Plaintiff's FAC show that the statute was tolled. *See Jablon*, 614 F.2d at 682 (A dismissal of a complaint based on the statute of limitations "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.").

### 1. Discovery Rule

According to Plaintiff, the discovery rule applies to toll the statute of limitations in this case. California courts have applied the discovery rule to breach of contract claims where "[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect"; "the defendant has been in a far superior position to comprehend the act and the injury"; and "the defendant had reason to believe the plaintiff remained ignorant he had been wronged." *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5 (2003) (quoting *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983)) (applying the discovery rule to a breach of contract action where the breach was committed in secret and plaintiff would not reasonably discover the harm from the breach until a future time). "The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).

"[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury and are charged with knowledge of the information that would have been revealed by such an investigation." *Id*. at 808.

To delay accrual of a cause of action based on the discovery rule, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id*. It would be especially onerous to expect a contracting party "to continually monitor whether the other party is performing some act inconsistent with one of the many possible terms in a contract . . . when the breaching party can commit the offending act secretly, within the privacy of its own offices." *April Enters*., *Inc.*, 147 Cal. App. 3d at 832.

Here, Plaintiff sufficiently pled facts relating to the time and manner of discovery and inability to discover earlier despite reasonable diligence. Plaintiff alleges it was first made aware of the breach in June 2020 from a third-party. (Doc. No. 24 ¶ 17.) From 2015 to 2020, Plaintiff inquired of Defendant whether it owed Plaintiff commission under the Referral Agreement. (*Id*. ¶ 15.) Defendant never identified or disclosed any commissions owed until Plaintiff confronted Defendant about its discovery in 2020. (*Id*. ¶¶ 15, 18.) Plaintiff alleges that it could not make this discovery earlier because it relied on Defendant's representations to repeated inquiries about commissions owed. (*Id*. ¶ 16.)[3]

Moreover, Defendant plausibly "has been in a far superior position to comprehend the act and the injury . . . [and] had reason to believe the plaintiff remained ignorant he had been wronged" *Gryczman*, Ltd., 107 Cal. App. 4th at 5. This is supported by the two alleged payments in 2013 and 2014 after the Referral Agreement's effective termination, but no payments subsequent. (Doc. No. 24 ¶ 15.) These payments support Plaintiff's reasonable reliance on Defendant's representations regarding commissions owed. Plaintiff alleges that Defendant maintained records of the commissions owed in a spreadsheet that was not

---

[3] Although not necessary to invoke the discovery rule, it is plausible that Plaintiff's efforts to contact third parties regarding commissions would have been unsuccessful because of non-disclosure agreements between Defendant and third-parties.

provided to Plaintiff until 2020. (*Id*. ¶ 18.) Plaintiff claims that only Defendant controlled the information Plaintiff requested and knew Plaintiff sought the information but could not obtain it without Defendant providing it. (*Id*. ¶¶ 20, 21.) As such, it would be onerous to require Plaintiff to discover the breach sooner because Defendant could breach "secretly, within the privacy of its own offices." *April Enters*., *Inc.*, 147 Cal. App. 3d at 832.

Based on the FAC, Plaintiff had no knowledge of, or reason to suspect, its injury until June 2020 and was unable to discover the injury earlier despite reasonable diligence. (*Id*. ¶ 25.) Accordingly, the Court finds that Plaintiff has adequately pled facts to demonstrate that the discovery rule applies to delay accrual of the statute of limitations in this case until June 2020. *See Fox*, 35 Cal. 4th at 807.

### 2. Continuous Accrual

Plaintiff also alleges that the continuous accrual doctrine applies because Defendant "has a continuing obligation to pay commission on the referrals based on the survival provision in the Referral Agreement." (Doc. No. 24 ¶ 25.) "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). Generally, "continuous accrual applies whenever there is a continuing or recurring obligation." *Id*. at 1199 (citation omitted). Each new breach of an obligation that provides all elements of a claim is treated as an independently actionable harm with its own time limit for recovery. *Id*. However, the theory "supports recovery only for damages arising from those breaches falling within the limitations period." *Id*. The doctrine effectively limits the amount of retroactive relief a plaintiff can recover to the benefits or obligations which came due within each respective limitations period. *Id*.

Here, Defendant argues that Plaintiff did not provide the specific nature and timing of each breach. (Doc. No. 17 at 15.) But Plaintiff alleges Defendant failed to pay commissions each year under the Referral agreement since 2015. (Doc. No. 24 ¶ 25.) Plaintiff also alleges the dollar amounts owed from each year that Defendant did not pay

commissions. (*Id.* at ¶ 18.) Defendant asserts that Plaintiff cannot demonstrate a breach without pleading "the specific referrals or products for which [Defendant] allegedly owes Plaintiff Commissions." (Doc. No. 17 at 15.) However, Plaintiff only needs to plead a "short and plain statement of the claim", Fed. Rule Civ. Proc. 8(a), "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). Plaintiff's allegations relating to the years and amounts owed satisfy this pleading standard. (Doc. No. 24 at ¶ 18.)

Plaintiff claims Defendant has a recurring obligation to pay commissions each month. (Doc. No. 24 ¶ 9.) Thus, each breach every month is an independent actionable harm with its own time limit for recovery. *See Aryeh*, 55 Cal. 4th at 1199. Therefore, as Plaintiff filed the complaint on August 17, 2020, all breaches falling within the four-year statute of limitations—i.e., those after August 17, 2016—are timely under the continuous accrual doctrine. *See e.g., Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1396 (2004) (holding monthly payments create a new breach for each month missed and a separate statute of limitations period for each breach); *Tsemetzin v. Coast Fed. Sav. & Loan Assn.*, 57 Cal. App. 4th 1334, 1344 (1997) (allowing the plaintiff to recover missed monthly payments within the four-year statute of limitations).

### 3. Fraudulent Concealment

Plaintiff also claims that the doctrine of fraudulent concealment tolls the statute of limitations. However, finding that both the discovery and continuous accrual rules apply, the Court deems it unnecessary to analyze the fraudulent concealment claim at this time.

### B. Accounting

Plaintiff asserts an action for accounting to determine amounts owed under the Referral Agreement. To establish an action for accounting, Plaintiff must show, "a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).

Plaintiff alleges a relationship exists created by the Referral Agreement. (Doc. No. 24 ¶ 29.) This relationship requires Defendant to pay commissions to Plaintiff. (*Id.*)

1  Plaintiff further alleges Defendant owes Plaintiff an amount more than $1 million, and the
2  exact amount cannot be ascertained without an accounting of payments made to Defendant
3  by referred customers. (*Id*. at ¶¶ 30, 31.) Defendant's sole attack on the sufficiency of
4  Plaintiff's accounting claim is that it relies on the deficient facts asserted for breach of
5  contract and is outside the statute of limitations. (Doc. No. 17 at 14.) Having found that
6  Plaintiff alleged facts sufficient to show that its breach of contract is timely and adequately
7  pled, the Court finds the facts alleged in the FAC sufficient to state a claim for accounting.

### C. Declaratory Relief

Plaintiff's final cause of action is for declaratory relief, requesting the Court to determine if the survivability provision survived the Referral Agreement's termination. (Doc. No. 24 ¶ 33.) Declaratory relief is appropriate when an action has been "felt in a concrete way by the challenging parties." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993). Declaratory relief can do so when it can settle uncertainty or controversy faced by the parties. *See United States v. State of Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). In California, the statute of limitation for declaratory relief is "determined by the nature of the underlying obligation sought to be adjudicated." *Snyder v. Cal. Ins. Guarantee Ass'n*, 229 Cal. App. 4th 1196, 1208 (2014).

Like with the accounting claim, Defendant's only attack on the claim for declaratory relief is that it is fatally intertwined with the breach of contract claim and barred under the statute of limitations. (Doc. No. 17 at 14.) Plaintiff's claim for declaratory relief is based on the underlying breach of the Referral Agreement, which the Court found to be adequately pled. And as Plaintiff sufficiently pled facts to trigger the discovery and continuous accrual rules, the Court rejects Defendant's argument that the declaratory action is untimely.

//
//
//
//

### IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss the FAC. (Doc. No. 17.) Defendant must file a responsive pleading <u>no later than February 18, 2022</u>.

**IT IS SO ORDERED**.

Dated: February 4, 2022

Hon. Anthony J. Battaglia
United States District Judge